UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY CLARK-ERSKINE, | ) |
| Petitioner, | ) |
| | ) CAUSE NO. 3:07-CV- 453 RM |
| v. | ) |
| | ) |
| WILLIAM WILSON, | ) |
| Respondent. | ) |

## OPINION AND ORDER

Jeremy Clark-Erskine a pro se prisoner, filed a habeas corpus petition to challenge his prison disciplinary conviction for escape. The CAB imposed sanctions that included Clark-Erskine's loss of 400 days of earned credit time and demotion in credit class. The escape conduct violation report was issued against Mr. Clark-Erskine after he didn't return from a temporary pass allowing him to leave Liberty Hall for a job interview.

The petition presents four grounds for relief, but Mr. Clark-Erskine concedes one has no merit. Two of the remaining three alleged grounds for relief rest upon Mr. Clark-Erskine's claim that he didn't receive a copy of the conduct report at screening, or a copy of the CAB's factual findings after the disciplinary hearing. Finally, Mr. Clark-Erskine contends the Indiana Department of Corrections didn't have authority to sanction him because Liberty Hall is not an IDOC facility.

Mr. Clark-Erskine has a liberty interest in earned good time and he is entitled to basic procedural protections before it can be taken away for misconduct. These minimal, due process requirements are met by: (1) prior written notice of the charges; (2) an

opportunity to present evidence; (3) an impartial decision maker; (4) a written statement of the evidence supporting the disciplinary action and the reasons for it; and (5) "some evidence in the record" to support the finding of guilt. *See* Wolff v. McDonnell, 418 U.S. 539, 557 (1974).

Mr. Clark-Erskine claims he did not receive "state form 39540" before the disciplinary hearing. The respondent submitted a copy of Liberty Hall's conduct report dated June 25, 2007, with Mr. Clark-Erskine's signature. That report states the charged offense is escape, code "108" based on the following:

> On 3/10/06 at approximately 1200 pm resident Jeremy Clark - Erskine DOC # 112830 was released on a Temporary Pass for a temporary pass [sic] for a job interview. Clark-Erskine's destination was Claddagh restaurant on 3835 East 96th st., [sic] his interview was with manager Scott Kelly. Clark-Erskine was to return from his pass back to Liberty Hall at 4:00 pm. Clark-Erskine did not return at his scheduled time from his pass. This report writer then contacted Claddagh Restaurant and inquired about Clark -Erskine. The staff there spoke with Manager Scott Kelly about his interview and advised this report writer that they had no interviews today. End of Report.

Mr. Clark-Erskine questions the authenticity and completeness of the record the respondent filed with the court. He maintains the court shouldn't rely upon this "incomplete and inaccurate record." The petitioner further declares the respondent's exhibits to be without probative value because they aren't certified in accordance with the rules of evidence. Despite his objection to the respondent's signed copy of the screening and disciplinary hearing reports, Mr. Clark-Erskine doesn't claim his signature is forged or otherwise counterfeit. And he cautions the court shouldn't accept his submissions at face value either.

Mr. Clark-Erskine's signature doesn't appear on the copy of the conduct report he submitted, but D. Long's signature on the screening report attests that he gave Mr. Clark-Erskine a copy of the conduct report. D. Long also saw Mr. Clark-Erskine sign the screening report, which says D. Long notified the petitioner of the upcoming disciplinary hearing as well as the rights he would be afforded at those proceedings. The disciplinary hearing took place four days after screening, on June 29 , 2007. Mr. Clark-Erskine testified that he didn't come back from work release because he feared deportation. The record supports the inference that Mr. Clark-Erskine received the conduct report on June 25, 2007. The conduct report given to Mr. Clark -Erskine at screening sufficiently notified him of the charges against him even if it wasn't "state form 39540."

Mr. Clark-Erskine insists "his ability to appeal at all levels" was hindered because he didn't receive "written notice of findings of fact at CAB." Mr. Clark-Erskine doesn't explain how receiving the DHR before it was approved prejudiced him. He doesn't claim the report's contents are inaccurate. He declares that he signed the disciplinary hearing report before the hearing started and before it was approved. As proof, he points out that there is no date next to his signature. This isn't probative of any material fact because the date doesn't appear next to any of the signatures of the three CAB members; the date is at the top of the form inside a box labeled "Date of Hearing." The important thing for the court's purposes is that Mr. Clark-Erskine initialed the box with the statement "I have been made aware of this disposition/recommendation and of my rights to appeal." Mr. Clark-

Erskine's ratification of this representation demonstrates that he received a copy of the hearing report after it ended.[1]

The respondent maintains that Mr. Clark-Erskine's final claim, that IDOC couldn't sanction him for escape because Liberty Hall isn't an IDOC facility, is procedurally defaulted. In turn, Mr. Clark-Erskine contends the respondent didn't file complete copies of the first and second steps in the administrative appeal; he maintains the second page of each document is missing. Mr. Clark-Erskine maintains the omitted pages show he didn't procedurally default. According to Mr. Clark-Erskine, page 2 of Exhibit E contained references to his quasi-jurisdictional claim regarding Liberty Hall's status.

As Mr. Clark-Erskine points out, Exhibit E comprises more than one page; that isn't evident with respect to Exhibit D. Unlike Exhibit E, Exhibit D doesn't refer the reader to another part of the document or otherwise suggest the single page is incomplete.

Exhibit D, the first step appeal states:

> All adult offenders are afforded specific due process right some of these rules/rights are outlined in DOC /Policy No. 02-04-01 or the A. D. P.; this offender was issued a formal conduct report on the date of this incident, (March 10, 2006), providing the offender was available, a hearing should have been held within seven (7) working days. However, the offender was not available and pursuant to Sect. VII, (E)(1)h of the ADP, hearing was postponed accordingly. (Note State Form 49521 was never used contrary to policy); Pursuant to Sect. VII, (E)(1)h of the ADP, the offender became available at the facility on June 16, 2007, th e first working day the offender was available was June 18, 2007, as such, a hearing should have occurred no

---

1. Moreover, the court observes Mr. Clark-Erskine's claim regarding the DHR changed. Mr. Clark-Erskine originally said he "never" received a copy of the DHR. Then, in his traverse, he moved away from this stance to claim he didn't receive the report after its approval.

> later than June 26, 2007. The hearing date was three days beyond the limit set by policy. No other postponement was noted, requested or granted. Further, DHB failed to correctly apply Sect.(s) V(A)(3), V(B)(4); and V(D)(1) of the ADP when calculating sanctions. Finally, DHB and the facility has failed to provide State Form 39586 to the offender in violation of Sect. VII(8)4 of ADP. I therefore respectfully request a substantial reduction in sanction or overturning the natter fd/(sic) the breaches of policy.

Page 2 of Exhibit E states:

> The response in Section 2 states that, "[I] am simply being held accountable for [my] actions." Granted. "Accountability" is why I surrendered myself to authorities, informed them of my DOC warrant and cooperated in my return to Indiana. I'm simply looking for the Department to now be accountable for it's own actions when it seems clear it has violated it's own procedures. I hope this can be resolved here. Than you for your time.

The respondent's Exhibit E and Mr. Clark-Erskine's Exhibit E are the same except for the last sentence on the latter, which reads:

> Further, DHB and the facility has still not provided State Form 39486"Report of Disc. Hearing"to the offender in violation of ADP, sect. VIII (E) 4, <u>nor was a copy of State Farm 39590, "Formal Conduct Report" provided prior to the CAB</u>.

Mr. Clark-Erskine didn't supply a copy of an omitted second page for Exhibit D, so nothing suggests the original Exhibit D had a second page. The respondent's Exhibit E doesn't include any of the underlined part of the sentence after the phrase "ADP, sect. VIII (E) 4." Instead of a comma, a period follows the phrase to end the sentence at the "4." Mr. Clark-Erskine offers no theory to account for the discrepancy between the two first pages of Exhibit E, but the notation "(cont. on rev.)" on the bottom of the first page of Exhibit E indicates that the second page actually is the reverse side of the first page rather than a separate sheet of paper.

5

Still, neither exhibit mentions any challenge to the IDOC's authority to discipline residents of Liberty Hall. In the first-step appeal, Mr. Clark-Erskine complained "ADP," the Adult Disciplinary Procedures mandated that the IDOC provide him with a copy of the screening report, form 39586. The conduct report Mr. Clark-Erskine received is Liberty Hall's form, rather than form 39590. He didn't mention form 39590 in the first-step appeal; the only form he mentioned was 39586. Read fairly, this claim merely states Mr. Clark-Erskine did not receive a particular form.

The argument that the IDOC didn't use "State Form 39590" to notify him of the conduct report didn't present a claim the Liberty Hall wasn't part of the IDOC. Using Liberty Hall's form to notify Mr. Clark-Erskine of the prison disciplinary escape charge didn't violate due process. These claims elevate form over substance; the Due Process Clause doesn't require that a prisoner be given written findings with a particular form. <u>Wolff</u> requires a written statement of the evidence relied upon and the reasons for the factfinder's decision in a disciplinary action to protect the prisoner "against collateral consequences based on a misunderstanding of the nature of the original proceeding" without which the inmate would be disadvantaged in presenting his own cause to or defending himself. <u>Wolff</u>, 418 U.S. at 564-565. The conduct report notified Mr. Clark-Erskine of the escape charge and the factual circumstances that supported it. At the disciplinary hearing Mr. Clark-Erskine didn't deny he left Liberty Hall (ostensibly for a job interview) and didn't return at the designated time. Since the disciplinary proceedings didn't take place until June 25, 2007, he apparently remained at large for more than a year.

The superintendent denied the appeal on July 20, 2007, then denied the second-step appeal. "No procedural errors *are* evident," he found. The record shows Mr. Clark-Erskine appealed the CAB's decision to the Final Reviewing Authority, C.A. Penfold, who similarly found no "evidence of procedural or due process error." Mr. Penfold also determined the sanctions fell within ADP guidelines. Any errors Mr. Clark-Erskine pointed out "did not impede with [his] defense or right to appeal," Mr. Penfold concluded. The court agrees.

Therefore, the court DENIES the <u>habeas corpus</u> petition ( docket # 1).

SO ORDERED.

ENTERED: February 23, 2009.

<u>  /s/ Robert L. Miller, Jr.  </u>
Chief Judge
United States District Court
